Thank you, Your Honor. May it please the Court, Craig Durham appearing on behalf of the petitioner. And before I begin my remarks, Your Honor, I would like to just thank the Court for allowing us to appear in person in a pro bono case. And it's been an honor and a privilege for me to be part of the program, and I really appreciate that. I do want to thank the government as well for their professionalism and cooperation in mediating the five writer petitions that were part of this case. And so all that's left before the Court today is Ms. Pham's petition. We thank you for your pro bono participation. That's a very important part of – particularly in the immigration area. Thank you, Your Honor. It's vital, and I think the government would concede that the quality of representation is greatly increased by the wonderful cooperation and volunteer spirit of a number of the firms that have provided counsel pro bono. So we thank you for that, and please proceed. Thank you, Your Honor. Given the time constraints today, I'm going to focus on the first issue that we raised in the brief, and that's the issue involving the introduction of Ms. Pham's – I'll call him estranged husband's – out-of-court statements to prove the marriage fraud in this case. And I think because of the voluminous nature of the records in the briefing, the essence of this issue gets a little muddied and gets a little lost. This is really a due process issue. It's a broad claim that this evidence that was introduced and relied on by the government to prove its case was so unreliable that Ms. Pham was denied a due process. Now, there are a couple of subsidiary claims within that broader claim. And I know the government is arguing that Ms. Pham failed to exhaust in the BIA one of those subsidiary claims, and that's the cross-examination claim, where she argues that the failure to engage in reasonable efforts to secure Mr. Nguyen's presence denied her the right to cross-examine him in these proceedings. It's our contention that the claim is broad enough that was presented to the BIA, that that piece of it was also exhausted. And in this case, Ms. Pham was denied a due process. And I know the government is arguing that Ms. Pham failed to exhaust in the BIA one of those subsidiary claims, and that's the cross-examination claim, where she argues that the failure to engage in reasonable efforts to secure Mr. Nguyen's presence denied her the right to cross-examine him in these proceedings. And in this case, Ms. Pham failed to exhaust in the BIA one of those subsidiary claims that the government says was not presented to the BIA. The way I construe it is the law is that the government has to engage in reasonable efforts to secure the presence of an adverse witness so the alien can cross-examine that witness. Was that done here, though? What efforts? What do you understand the government to have done to produce Ms. Pham's ex-husband? So there were efforts that were made. There certainly were efforts that were made, Your Honor. Our contention... Were there three subpoenas or something to that effect? Yes. Yes. There were efforts made. It's our contention that it was defense counsel that was made to shoulder that burden, not the government. And it's defense counsel that went out and tried to serve those subpoenas on Mr. Nguyen. But at the end of the day, though, counsel, isn't the issue due process and an opportunity to cross-examine? The fact is there was an effort made to produce him. The government certainly didn't oppose it in any way. But at the end of the day, don't we end up with an analysis of whether there's substantial evidence, even if you assume that she was denied this right in the context of an immigration hearing, that there's still substantial evidence that is enough to overwhelm your client's position in this case? No, I don't think so. And so let me address that. And I don't want to get bogged down on this reasonable efforts thing. I think the bigger problem here is simply the reliability of these out-of-court statements. And that's the second piece of the broad issue that I was talking about. So you rely on Hernandez-Guardarama. I'm sure I'm mispronouncing that. But in that case, the woman was the witness, I guess, was incontestably or contestably, but the violation of Section 1326 was part of the record, and she thought by cooperating she could get better treatment, whereas here there wasn't a claim against Mr. Nguyen until he hadn't violated anything, until he admitted marriage fraud. So it didn't seem to me that Hernandez-Guardarama was exactly on point. Well, I think, and I understand that, Your Honor, and I understand that that's the government's argument, is that this was essentially a statement against his own interests, I guess, and that made it reliable. I mean, it's hard to understand that somebody who actually was married to their spouse would say, no, actually I wasn't married because it was fraudulent on the basis that it's safer to admit to marriage fraud to somebody you're actually married to. I mean, it just doesn't really make a lot of sense. Sure, sure. No, and I think in the abstract I would agree 100 percent. But I think in the facts and circumstances of this case, what happened during this interview was that the law enforcement agent was aware that not only that there was this marriage fraud allegation, but in addition to that, that Mr. Nguyen was potentially committing public benefits fraud, Social Security fraud. He had a roommate who he wasn't supposed to have living with him. She made him aware of all of that. But beyond the declaration against interest, it seems to me that the BIA found that these statements were reliable because they were sworn declarations on authenticated immigration forms. It's somewhat a different rationale than the immigration judge found. So isn't our review specific to the BIA ruling then? Yes, Your Honor, I would agree that your review is of the BIA's ruling. My recollection of what the BIA said was that a statement on an authenticated immigration form is reliable, absent evidence to the contrary. Well, it's our contention that there was plenty of evidence to the contrary here. And what is that evidence? Well, it's what I was explaining. So just to set the scene a little bit here, I guess, Mr. Nguyen and Ms. Fong had been married six years previously when this interview took place. They'd been separated for a long time. Well, they were never together. That's the problem. Correct. Well, he lived in this country. That's what I'm wrestling with because, as I understand it, they were introduced by a third party. They get engaged after three days. Sure. They're really not together. He's much older than she is. He's in the United States. She's in Vietnam. I mean, when she does come there, the apartment's not in her name. There are credit cards in her name. I mean, basically, there are no indicia that one would normally find in a marriage relationship in this situation, which is why I get back to what I said in the beginning. Even if we totally discount Mr. Nguyen's testimony, isn't there substantial evidence upon which the BIA could rely to affirm the IJ's ruling here? I don't think so. I think that's the only evidence of fraud. So you take his statements that this was an arranged marriage, and then you add what Your Honor was talking about, then you have the case. But if you cut out his statements, there is no other evidence. Let me put it this way. I've seen a lot of these cases where there's no Mr. Nguyen, and we have evidence substantially similar to what we have here, and we've affirmed marriage fraud. So I guess I'm struggling with why there's a huge difference here. Sure. And the only response I have, Your Honor, and I don't have that experience, as much experience as you in that, is that the way I view this case is that the bulk of this case was based on Nguyen's statements. If they don't have Nguyen's statements, they don't have a case. Proceedings would not have started, I don't believe. So you don't think there's substantial evidence separate and apart from Mr. Nguyen's testimony? That would be my position, yes, Your Honor. Can I get to the Lee v. Holder issue, the maxim falsis in uno, falsis in omnibus? It seems to me that, on a whole, the credibility determination of the immigration judge also included the statements by your client that she essentially didn't know or had help in filling out these forms. And so in my view, doesn't that sort of color the entire asylum petition? Your Honor, I understand that there is, and that the law is if you find an adverse credibility finding that that can affect the asylum petition. My position, Your Honor, in response to your question directly, is that I don't think that's sufficient to find the adverse credibility finding, but I'll rely on the brief in response to that, Your Honor. Counsel, you've used your time. We'll give you a little bit of rebuttal time, but let's hear from the government now. But we'll try not to give you a minute to respond. Thank you, Your Honor. Good morning, Counsel. Good morning, Your Honors. May it please the Court, my name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. I'll just jump right into the issue of the admission of, I'll refer to the husband here as Nietzsche, the admission of Nietzsche's hearing transcript and his sworn statement. As an initial matter, petitioner contends that the government did not make reasonable efforts to secure Nietzsche's presence. Can we reach that or is that not exhaustive? We say exhaustion is jurisdictional, so if it's not exhaustive, we can't even reach that issue. That's correct. I was going to jump and start in with that, that it's the government's contention that that claim is not exhausted. And, in fact, it's abandoned. The issue of lack of cross-examination was brought up initially before the immigration judge at the outside of the proceedings, and after two years of attempting to secure Nietzsche's presence in court, it was never again raised. And it's the government's position that that issue was not raised because it's a tacit agreement by petitioner that Nietzsche's presence in court. What about the argument that opposing counsel makes that his absence goes to reliability of his testimony because he wasn't available for cross-examination? Why isn't that part of his reliability claim? I don't think the – first of all, I believe it's two separate issues, whether statements are reliable and whether the government made reasonable efforts to secure the witness's presence to potentially admit or not even admit the documents to begin with. But I don't think there can be an inference of unreliability or reliability because we don't know why he didn't come. He may have been in the hospital. One of the subpoenas was not even served on him, so I don't think there can be any – Well, I think the point is his testimony wasn't subject to cross-examination, which we believe in our system makes the – can make the testimony unreliable because it's not tested. I would just reiterate that in immigration proceedings, the right to cross-examination is not absolute. The test is whether it's fundamentally fair to admit a piece of evidence, and it's considered fundamentally fair if the government has made efforts to produce a witness, and despite those efforts, the witness still doesn't appear in court. Is the government content with the concept that if, in trying to make certain that Ms. Pham is not prejudiced in any way, if we just put aside Mr. Nguyen's testimony and rely solely on the other evidence, is the government's position that, notwithstanding that, there's more than enough substantial evidence there, if we get to the case, I'm putting the exhaustion issue aside, but if we get to it, isn't there enough evidence there to affirm the IJ and the BIA? So I don't – I don't think I can answer yes or no to that. The board and the immigration judge both seem to rely heavily on his statements in finding that she committed marriage fraud and was thus removable, but at the same time, the immigration judge did, separate and apart from his statements, find Petitioner not credible on her testimony alone relating to the marriage fraud issue. So it is a possibility that her statements alone would sustain the government's burden of proof in showing that she's removable. The reason I ask that, Counsel, is because, of course, she made an asylum claim as well. Yes. And the government, in effect, relies on the falso and unum falso and omnibus concept, and that had really little to do with Mr. Nguyen's testimony. It had to do with the other things that she did vis-à-vis the forms, her very inconsistent statements and the like. So – but what you're saying, we really have to take Mr. Nguyen's testimony by way of the affidavit into account, if we get to the issue at all. I think so. The way the agency organized its decision, I think they relied primarily on his statements. But at the same time, I can't say that – I don't know what the Board would have done, because the Board didn't address the issue of whether Ms. Pham's testimony, in isolation from the statements, would have been sufficient evidence to find her removable. I would argue that it is, but the Board didn't have the opportunity to address that specific finding. It seems to me, in the Lee v. Holder matter, that there's a potential to make a distinction between the statements of the petitioner with respect to the lawful marriage and then past persecution. I mean, is it reliable or reasonable to say that these should be lumped together in terms of her credibility determination, because aren't they sort of separate and distinct from one another? The claims are separate and distinct, but under the REAL ID Act, an immigration judge may base an adverse credibility finding on any relevant factor and on the totality of circumstances. And I'd be hard-pressed to say that a finding of immigration fraud is not a relevant factor. I think it's very relevant here, and that was just one of the factors the agency relied on in finding her not credible in all of her other statements, in addition to the fact that she made many inconsistent statements in her claim to asylum. And it was proper for the agency to take all of those factors into consideration when finding her not credible on almost all of the statements that she made. Counsel, assume arguendo for a minute that we don't address the first issue because we think it's not exhausted. You still have the asylum claim, right? That's a separate and distinct matter, or do you believe that is also subject to the exhaustion problem? I believe Petitioner did exhaust the asylum claim, so I don't think it is subject to the exhaustion issue. So basically we have to address, even if we were to agree with the government that she did not exhaust the claim vis-a-vis the Wynn affidavit, we still have to address the asylum issue, right? I think in between that, I think the court would still have to find the affidavit admissible and reliable, which the government contends that it is. And based upon the reliability of those statements, that pretty much ends Petitioner's claim for asylum because she's not credible on basically her asylum claim and her marriage fraud claim. We have to affirm on the marriage fraud claim as well. Is that right? I mean, that's before she's challenging that. I think the crux is the removability issue. Which is based on marriage fraud, correct? Correct. Yeah, so we do have to address the marriage fraud issue. And what I heard you say is that the BIA relied on Wynn's testimony, and so under a sort of SECV chainery-type rule, we couldn't affirm the agency on a different ground. Theoretically, but I think remand for any additional decision-making by the agency would be futile here because the record is replete with inconsistencies regarding the asylum claim, regarding the marriage fraud claim, and the immigration judge, although the board didn't specifically analyze each one of the immigration judge's findings, the immigration judge did make very separate and alternative findings. That's what I was talking about earlier when I asked you whether there was substantial evidence aside from the Wynn affidavit. It sounds to me like you are now saying, yeah, there was substantial evidence and that we could, in fact, rely upon that even if we set aside, assuming for a moment the exhaustion issue is taken care of, which is beside the Wynn matter. Would that be on a harmless error type? Yeah, harmless error, futility argument. Remand just would not be necessary just because the record is replete with inconsistencies, and although the board did not specifically address those findings, the record is replete with inconsistencies. And is that your substantial evidence, the inconsistencies? Is that what you're saying here? Yes. In addition to Mr. Nietzsche's statements, Ms. Pham alone made inconsistent statements, did not corroborate any of her claims regarding marriage fraud and independently regarding asylum, and substantial evidence supports the finding that she is both removable and ineligible for asylum, and substantial evidence also supports the conclusion that she's not credible on either both grounds, separately and independently. So if I understand you right, you're saying that we could uphold the removability based on marriage fraud based on Mr. Wynn's testimony along with other evidence in the record, but if we determine that Mr. Wynn's testimony was inadmissible so that there was an error in considering it, that error was harmless because there is other evidence in the record or overwhelming evidence in the record, I'm not sure what our harmless error standard would be in the immigration context that would allow us to find marriage fraud. Am I understanding that correctly? I would say harmless error in regard to, if the court were to find that the adverse credibility finding could not extend to the asylum claims, I think the harmless error in that the court could still affirm adverse credibility on the asylum grounds. Well, there's plenty on asylum, on the asylum. But with regard to the removability, I don't really know the answer because absent Mr. Wynn's statements, she did, the petitioner did make, was found not credible on her testimony alone with marriage fraud, but it's the government's burden to prove by clear and convincing evidence. It's a higher standard. And I believe the immigration judge and the board should have the ability to address that in the first instance. I just don't know if that would meet that threshold or not. Okay, thank you. Any other questions by my colleagues? Please sit down, sir. No, you're out of order. I'm sorry. Any other questions? No further questions. No, you may not. Please remove him from the courtroom if he won't be quiet. Thank you, counsel, for your testimony. Thank you, Your Honors. We'll have a rebuttal from counsel. Very briefly, Your Honor, just to follow up with counsel's last point, I don't think there's a case to begin with without Mr. Wynn's statements. The case does not begin. He's the only one that testified that this was fraudulent. The remainder of it was inconsistencies in Ms. Fahm's testimony. That's the remainder of the case. And so if you take Mr. Nguyen's – Well, can't the court view her own statements as to her status of her marriage as evidence of fraud? The court can, yes. But I don't believe that there is enough there to show marriage fraud unless you have this other individual who says, yes, I was paid to arrange this marriage. That's the heart of the case. You cut that case out, then there is not substantial evidence to support the remainder of it. And I wanted to just, in the time I have left, I want to address the asylum issue and the Lee v. Holder issue. My understanding, and I didn't go back and read it while I was sitting here, but in Lee v. Holder, under the REAL ID Act, an adverse credibility as to one asylum claim can bleed over into another asylum claim. What we have here is an adverse credibility as to removal bleeding over into an asylum claim. And there was no contrary evidence to Ms. Pham's claim of persecution in Vietnam other than the fact that the immigration judge just thought she wasn't credible. And that's the basis for why you had the adverse credibility on that. Counsel, I'm afraid your time has expired. Yes, thank you, Your Honor. We thank both counsel for their argument. Appreciate it. Thank you, Your Honor. The case just argued is submitted.
judges: M. Smith, Ikuta, Humetewa